1  ELIZABETH A.  BROWN (SB# 235429)
   CLAIRE A.  HOFFMANN (SB# 292584)
2  lisabrown@gbgllp.com
   clairehoffmann@gbgllp.com
3  GBG LLP
   601 Montgomery Street, Suite 1150
4  San Francisco, CA  94111
   Telephone:  (415) 603-5000
5  Facsimile:  (415) 840-7210

6  Attorneys for Petitioner
   PACIFIC BELL TELEPHONE COMPANY
7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11 PACIFIC BELL TELEPHONE COMPANY,          Case No.

12            Petitioner,                   **PETITIONER PACIFIC BELL
                                            TELEPHONE COMPANY'S PETITION
13     vs.                                  TO VACATE ARBITRATION AWARD;
                                            MEMORANDUM OF POINTS AND
14 COMMUNICATIONS WORKERS OF               AUTHORITIES IN SUPPORT
   AMERICA, LOCAL 9412, AFL CIO,           THEREOF**
15 Employee Organization,

16            Respondent.

17 ─────────────────────────────

18 JAMES MULVANEY, an individual,

19            Real-Party-In-Interest.

20

21

22

23

24

25

26

27

28

## PETITION TO VACATE ARBITRATION AWARD

Petitioner Pacific Bell Telephone Company ("Pacific Bell") hereby petitions the Court, pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, to vacate the Arbitrator's Opinion and Award, issued by Arbitrator Katherine J. Thomson ("Arbitrator") in Arbitrator's Case No. 454-OLC/CWA Case No. 9-7-10 and filed on September 25, 2018, in which Communications Workers of America, Local 9412, AFL-CIO was the claimant and Pacific Bell was the respondent, in a matter involving James Mulvaney ("Mulvaney"). This Petition is based on the supporting memorandum of points and authorities, the accompanying Declaration of Jeffrey Robertson, and the arguments of counsel.

## JURISDICTION

"Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 ('section 301'), grants federal courts jurisdiction to vacate a labor arbitration award." *Sheedy Drayage Co. v. Teamsters Union Local No. 2785*, No. C-12-6204 EMC, 2013 WL 791886, at *2 (N.D. Cal. Mar. 4, 2013). *See also Sheet Metal Workers' Int'l Ass'n, Local 206, of Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. R.K. Burner Sheet Metal Inc.*, 859 F.2d 758, 760 (9th Cir. 1988) ("The district court has jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), to vacate or enforce a final labor arbitration award.") (rejecting company's argument district court lacked jurisdiction to confirm National Joint Adjustment Board decision). The 2016 Contract between the Communications Workers of America and Pacific Bell, which sets forth the grievance and arbitration procedures, does not confer jurisdiction anywhere else.

Pacific Bell's petition is timely because it is filed within 100 days of service of the Award. In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 (1981), the Supreme Court explained that "Congress has not enacted a statute of limitations governing actions brought pursuant to § 301 of the LMRA." *Id.* at 60. Accordingly, "'the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.'" *Id.* (citation omitted); *see also id.* at 64 (holding 90-day period for bringing action to vacate arbitration award under New York state law applied). Under the California Arbitration Act, a petition to vacate an award must be "served and filed not later than 100 days after the date of the service of a signed

copy of the award on the petitioner."  Cal. Civ. Proc. Code § 1288; *see also San Diego County District Council of Carpenters of United Brotherhood of Carpenters & Joiners of America v. Cory*, 685 F.2d 1137, 1142 (9th Cir. 1982) (concluding "that the 100-day California limitation period should apply.").

Venue properly lies in this Court because the Arbitrator's Award was made in this district. *See* Declaration of Jeffrey Robertson In Support of Petitioner Pacific Bell Telephone Company's Petition to Vacate Arbitration Award ("Robertson Decl.") ¶ 14, Exh.  K.

## **INTRADISTRICT ASSIGNMENT**

Pursuant to Local Rules 3-2(c) and 3-5(b), a substantial part of the events giving rise to this Petition occurred in Contra Costa County.

DATED:  January 3, 2019                    GBG LLP

By:_____ /s/ Elizabeth A. Brown_____
                              ELIZABETH A. BROWN

Attorneys for Petitioner
PACIFIC BELL TELEPHONE COMPANY

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 1

     A.      Following an Injury, Mulvaney Filed and Settled a Workers' Compensation Case. ....................................................................................... 2

     B.      Following his Worker's Compensation Settlement, Mulvaney Attempted to Return to Work As A Splicing Technician. ............................................... 3

     C.      Mulvaney's Union Filed a Grievance to Challenge Mulvaney's Leave of Absence. .................................................................................................... 4

     D.      The Arbitrator's Award. ............................................................................ 5

III.    THE ARBITRATOR'S AWARD SHOULD BE VACATED. ................................ 7

     A.      The Arbitrator's Award Exceeded the Scope of the Issue Submitted. ..................... 7

     B.      The Arbitrator's Award Does Not Draw Its Essence From the CBA. .................. 10

     C.      The Arbitrator's Award Runs Counter to Public Policy. ...................................... 13

IV.     CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers*
*Int'l Union, AFL-CIO, Local No. 361,*
   726 F.2d 698 (11th Cir. 1984)............................................................. 8, 10

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,*
   24 Cal. 4th 800 (2001) ......................................................................... 13

*Drain v. Betz Labs., Inc.,*
   69 Cal.App.4th 950 (1999) .................................................................. 14

*Evans v. Arizona Cardinals Football Club, LLC,*
   262 F. Supp. 3d 935 (N.D. Cal. 2017) ................................................. 13

*Jackson v. Cty. of Los Angeles,*
   60 Cal.App.4th 171 (1997) .................................................................. 14

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly*
*Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,*
   611 F.2d 580 (5th Cir. 1980).................................................................. 8

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001)................................................................... 7

*Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,*
   886 F.2d 1200 (9th Cir. 1989)............................................................... 10

*SunLine Transit Agency v. Amalgamated Transit Union, Local 1277,*
   189 Cal. App. 4th 292 (2010) ............................................................... 14

*Sunshine Mining Co. v. United Steelworkers of Am., AFL-CIO, CLC,*
   823 F.2d 1289 (9th Cir. 1987)............................................................. 7, 9

*United Food & Commercial Workers Int'l Union,*
*Local 588 v. Foster Poultry Farms,*
   74 F.3d 169 (9th Cir. 1995).................................................................. 13

*Virginia Mason Hosp. v. Washington State Nurses Ass'n,*
   511 F.3d 908 (9th Cir. 2007)................................................................ 10

**Statutes**

Cal. Lab. Code § 3600 ........................................................................... 14

Cal. Lab. Code § 3601 ........................................................................... 14

Cal. Lab. Code § 3602 ........................................................................... 14

//

# TABLE OF AUTHORITIES

**(cont'd)**

**Page(s)**

**Regulations**

20 CFR 416.967(d) .................................................................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

I.      **INTRODUCTION**

The Arbitrator's Award finding this matter arbitrable should be vacated.  James Mulvaney's ("Mulvaney") dispute with Petitioner Pacific Bell Telephone Company ("Pacific Bell") is properly addressed within the exclusive jurisdiction of worker's compensation laws. The Arbitrator plainly exceeded her authority by finding the issue submitted by Respondent Communications Workers of America ("CWA") to be arbitrable.

After settling his workers' compensation claims by stipulating to severe physical limitations contained in a medical report prepared as part of an Agreed Medical Evaluation ("AME"), Mulvaney attempted to return to work.  Relying on the AME that formed the basis of the workers' compensation award, Pacific Bell determined that Mulvaney's restrictions prevented him from performing the essential functions of his position and offered him a leave of absence as accommodation instead.  With the assistance of his workers' compensation attorney, Mulvaney underwent a medical re-evaluation from the doctor who performed the AME and submitted updated medical information to Pacific Bell.  Pacific Bell confirmed that Mulvaney had improved sufficiently to be able to perform the essential functions of his position and returned Mulvaney to his position.  This petition concerns Mulvaney's subsequent attempt to pursue arbitration regarding "false information" allegedly provided by Pacific Bell's third-party claims administrator regarding Mulvaney's AME.  The "false information" Mulvaney attacks is the original AME.

Mulvaney's claims are not arbitrable under the collective bargaining agreement that applied to his employment.  The Arbitrator's Award finding this matter arbitrable should be vacated because it exceeded the scope of the issue submitted, is not based on a plausible interpretation of the collective bargaining agreement, and it violates public policy because it undermines California's clear policy towards workers' compensation exclusivity.  Pacific Bell respectfully requests that the Court vacate the Arbitrator's Award.

II.     **FACTUAL BACKGROUND**

Pacific Bell is a subsidiary of AT&T, Inc., that provides and maintains both wired and

wireless telecommunications networks in California.  Pacific Bell employs Splicing Technicians to install and maintain wires, cables, and other components of Pacific Bell's telecommunications equipment.  Declaration of Jeffrey Robertson dated January 3, 2019 ("Robertson Decl.") ¶ 4.  The Splicing Technician position requires the ability to lift up to 100 pounds, which places it in the Federal category for "heavy work", a term that has been defined in 20 CFR 416.967(d) as work that "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  The position may also require climbing poles and ladders. Robertson Decl. ¶ 4.  At all times relevant to this Petition, Mulvaney worked as a Splicing Technician for Pacific Bell.  *Id.* ¶ 4.  Splicing Technicians employed by Pacific Bell are unionized as part of the CWA, and the terms of their employment are governed by a Collective Bargaining Agreement ("CBA").  *Id.* ¶ 4, Exh. A.

A.    **Following an Injury, Mulvaney Filed and Settled a Workers' Compensation Case.**

In 2012, Mulvaney filed two workers' compensation claims, alleging injury to his shoulder and other body parts.  Robertson Decl. ¶ 5.  Mulvaney was represented by legal counsel in his workers' compensation cases.  *Id.* ¶ 5.  For both of his workers' compensation claims and his return to work/accommodation efforts, Mulvaney communicated with the AT&T Integrated Disability Service Center ("IDSC"), a third-party claims-management service that administers, *inter alia*, claims for workers' compensation, short term disability benefits, and other disability-related claims.  *Id.* ¶ 5.[1]

At one point in the workers' compensation proceedings, the parties agreed to use an AME to resolve all medically related issues.  *Id.* ¶ 5.  The parties chose orthopedist Dr. Robert Bruckman of San Francisco to resolve all orthopedic issues regarding Mulvaney's shoulder injury.  *Id.* ¶ 5.

On November 21, 2013, Dr. Bruckman issued a report ("2013 AME Report") finding that Mulvaney had reached permanent and stationary status.  *Id.* ¶ 5, Exh. B.  The 2013 AME Report found that Mulvaney had lost 10% of his upper extremity function as a result of his shoulder

---

[1] IDSC is also known as Sedgwick Claims Management Services or Sedgwick.

injury, and concluded that the surgically repaired shoulder "will make it difficult or impossible for him to work at or above shoulder level indefinitely." *Id.* On March 24, 2016, the parties in the workers' compensation case settled Mulvaney's claim regarding his shoulder based on the 2013 AME Report. Robertson Decl. ¶ 6, Exh. C. Mulvaney stipulated that he had a 31% permanent disability which included 6% disability for his shoulder, and received monetary compensation based on this disability. *Id.* An Administrative Law Judge approved the settlement on March 25, 2016. *Id.*

### B.   Following his Worker's Compensation Settlement, Mulvaney Attempted to Return to Work As A Splicing Technician.

In April 2016, Mulvaney informed an acting supervisor at Pacific Bell that a work assignment he received conflicted with work restrictions from his workers' compensation claim. Robertson Decl. ¶ 7, Exh. D. Mulvaney's acting supervisor was unaware that Mulvaney had any work restrictions and contacted the IDSC pursuant to Pacific Bell's procedures for work restrictions and accommodations. *Id.* The IDSC informed Mulvaney's manager that the 2013 AME Report set forth a permanent work restriction to Mulvaney's shoulder that would make it "difficult or impossible for him to work at or above the shoulder level indefinitely." *Id.* Mulvaney's manager determined that Mulvaney's work restriction prevented him from performing the essential functions of the Splicing Technician position. *Id.* Pacific Bell placed Mulvaney on an unpaid leave of absence as an accommodation. *Id.*

On April 15, 2016, Mulvaney's union representative provided Pacific Bell with a medical note dated April 14, 2016, from Dr. Grewal at the Tracy Medical Group in Tracy, California. Robertson Decl. ¶ 8, Exh. E. Dr. Grewal's note stated that Mulvaney "was cleared to do his regular job duties." *Id.*

Following receipt of Dr. Grewal's note, Pacific Bell was now in possession of contradictory medical information regarding Mulvaney's work restrictions: According to the 2013 AME Report (and his workers' compensation award), Mulvaney had permanent shoulder restrictions, and according to Dr. Grewal, he did not. Mulvaney's workers' compensation attorney set up an appointment for Mulvaney to see Dr. Bruckman for a re-evaluation on August

5, 2016 to reconcile Mulvaney's work restrictions.  Robertson Decl. ¶ 9, Exh. F.  On August 5, 2016, Dr. Bruckman issued a new report which concluded that Mulvaney's shoulder problem had resolved and that he could return to work with no restrictions.  *Id.* ¶ 9, Exh. F.  Pacific Bell received this report from the IDSC on September 2, 2016, and on September 6, 2016, Mulvaney returned to work with no restrictions.  *Id.* ¶9, Exh. F.

C.    **Mulvaney's Union Filed a Grievance to Challenge Mulvaney's Leave of Absence.**

On September 13, 2016, CWA Local 9412 (the "Union") submitted a Step 1 Grievance Meeting Request on behalf of Mulvaney.  Robertson Decl. ¶ 10, Exh. G.  The Request to Meet stated the nature of the grievance was to "make employee whole."  *Id.*  The date of occurrence was listed as September 6, 2016, and the settlement sought was to "repay all lost wages, healthcare expenses, lost [sic] of seniority and make employee whole."  *Id.*  The Request to Meet identified as the source of the violation CBA Articles 1, 3, 7, "and any other that may apply."  *Id.*

Article 1 of the CBA recognizes CWA as the exclusive collective bargaining representative for Pacific Bell employees in certain occupational title classifications.  Robertson Decl. ¶ 4, Exh. A.  Article 3 of the CBA covers "Company-Union Relations," including meetings between Union and management representatives, time off for Union activities, collective bargaining meetings, Union activities on company premises, bulletin boards, Union security, payroll deduction of Union dues, and non-discrimination.  *Id*. at pp. 33-45.

Article 7 of the CBA sets forth the Problem Resolution Procedures.  *Id*. at pp. 79-91.  Section 7.05E1a provides that grievances must be presented in writing, and must "include the nature of the grievance; the date of the occurrence; the contractual article/section alleged to have been violated, if applicable, or if not applicable, the source of the alleged violation (e.g., MOA name or number, discipline, documentation); the name of the grievant; and the remedy sought."  *Id*. at p. 82.

Section 7.10A provides that "[i]f the Union is not satisfied with the Companies' decision at the final meeting in the grievance procedure, the Union may request that the grievance be arbitrated."  *Id*. at p. 85.  To pursue arbitration, Section 7.10D of the CBA requires the Union to

do the following:

> [N]otify the Companies in writing of its intention to arbitrate the grievance.  This **notice will specify the issues involved in the grievance** and remedy requested.  Specifically it will clarify the Union's original written presentation of the grievance to management.  This clarification will define the nature of the grievance; the date of the occurrence; the contractual article/section alleged to have been violated, if applicable, or if not applicable, the source of the alleged violation (e.g., MOA name or number, discipline, documentation); the name of the grievant; and the remedy sought for the purposes of arbitration, expedited arbitration and mediation.

*Id*. at p. 86 (emphasis added).  Under Section 7.12A, "[t]he Arbitrator has no authority to add to, subtract from, or otherwise modify the provisions of the [CBA].  *Id*. at p. 88.

On October 6, 2016, the Union submitted a Step 2 Grievance Meeting Request, with identical nature of the grievance, date of occurrence, settlement sought, and source of the violation as outlined in the Step 1 Grievance Meeting Request.  *Id*. ¶ 11, Exh. H.  The Final Company Position, dated May 2, 2017, denied Mulvaney's grievance:  "The Company's actions related to Mulvaney were appropriate based on his self identification of permanent work restrictions that prevented his being able to perform the essential functions of his job."  *Id*. ¶ 12, Exh. I.

On May 31, 2017, Ameena Salaam, the Assistant to the Vice President of CWA District 9, sent a letter to Pacific Bell's Director of Labor Relations stating the union's intent to arbitrate the grievance pursuant to Article 7.10D of the CBA.  *Id*. ¶ 13, Exh. J ("Notice of Intent to Arbitrate"). This document is key to this Petition.

The Notice of Intent to Arbitrate stated that the "**issue**" was "**False Information Provided by IDSC**."  *Id.* (emphasis added).  The remedy requested was "[r]epay all lost wages all healthcare expenses, lost seniority, lost pension, remove all pertinent documentation and make employee whole."  *Id.*  Contrary to the requirements of Section 7.10D of the CBA, the Notice of Intent to Arbitrate did not identify the article or section of the CBA alleged to be violated, or any other source of the alleged violation.  *Id.*

### D.    The Arbitrator's Award.

On September 18, 2018, Arbitrator Katherine J. Thomson (the "Arbitrator") held an evidentiary hearing in San Ramon, California.  Robertson Decl. ¶ 14, Exh. K.  At the hearing, the

1    parties stipulated that the issue to be determined was "[w]hether the Union's notice of intent to

2    arbitrate sets forth an issue that is subject to arbitration." *Id.*[2]

3         The Arbitrator issued the Arbitrator's Award as to the arbitrability of the matter on

4    September 25, 2018, holding that the matter was arbitrable.  *Id.*  As discussed in greater detail

5    below, the Arbitrator did not actually address the "issue" specified in the Intent to Arbitrate, but

6    rather posed a new issue,[3] which she then resolved.

7         The Arbitrator first found that the CBA "does not restrict grievances to matters alleging

8    … violation of its provisions." *Id.*  at p. 12.  In so concluding, she cited the requirements for the

9    Union's "written presentation of the grievance" under Section 7.05E1 (and not the Notice of

10   Intent to Arbitrate), which specifies that the union must list, among other things, "the contractual

11   article/section alleged to have been violated, if applicable, or if not applicable, the source of the

12   alleged violation (e.g., MOA name or number, discipline, documentation)." *Id.*  The Arbitrator

13   reasoned that "[t]he source of the **grievance** can be a Company action under this broad clause."

14   *Id.*  (emphasis added).

15        Compounding her errors by conflating the "written presentation of the grievance" in

16   Section 7.05E1 with the "Notice of Intent to Arbitrate" in Section 7.10D, the Arbitrator concluded

17   that "the dispute … is within the scope of Section 7.05.E.1.a, even if there are no contractual

18   violations cited," speculating that "the Company knew at a minimum that the grievance was

19   alleging that false information from the IDSC led to its actions" and because the Union stated that

20   Pacific Bell "unjustly sent Mr. Mulvaney home without pay predicated on false information

21   provided by the IDSC." *Id.*[4]

---

22   [2] The union also proposed another issue, to which Pacific Bell did not stipulate to arbitrate: "Did
23   the Employer violate the collective bargaining agreement when it failed to pay the Grievant back
     pay and benefits for company-initiated leave?  If so, what is the appropriate remedy?"  *Id.*

24   [3] The issue as phrased by the Arbitrator was "Did the Employer unjustly send the Grievant home
25   without pay predicated on false information provided by the IDSC?"  *Id.*

     [4] The Award further explained that during the arbitration hearing, "the Union focused its
26   arguments on its claim under Section 3.09 that the Company discriminated on the basis of
     perceived disability when it sent the grievant home.  The Company has pointed to nothing in the
27   collective bargaining agreement that excludes discrimination claims from arbitration."  *Id.* at p.
     12-13.  In response to Pacific Bell's contention that disability discrimination was never raised as
28   an issue in the grievance process or Notice of Intent to Arbitrate, the Award stated that "[t]here is

---

Finally, despite her clear confusion between "written presentation of the grievance" and "Notice of Intent to Arbitrate," the Arbitrator confirmed that "the Union is limited to the issues it set out in the notice of intent to arbitrate," but found that the submitted issue (i.e. "False Information Provided by IDSC" was "broad enough to include alleged discrimination and other unjust reasons for the Company's placement of the Grievant on Company-initiated leave without pay." *Id.* The Arbitrator concluded "that issue is a proper subject of arbitration under the broad conception of grievance in the [CBA]" and that "the Union's notice of intent to arbitrate sets forth an issue that is subject to arbitration." *Id.*

## III.   THE ARBITRATOR'S AWARD SHOULD BE VACATED.

The Arbitrator's Opinion and Award should be vacated because the issue submitted for arbitration by the Union – "False Information Provided by IDSC" – is not subject to arbitration under the CBA.

The Ninth Circuit has "identified four instances in which the vacatur of an arbitration award under section 301 is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001). The Arbitrator's Award is subject to vacatur on the first, second, and third bases identified by the Ninth Circuit because the disability discrimination issue is not arbitrable since it is not specified in the Notice of Intent to Arbitrate and, even if it were, the doctrine of workers' compensation exclusivity governs.

### A.   The Arbitrator's Award Exceeded the Scope of the Issue Submitted.

The Parties submitted one question to the Arbitrator for determination:  <u>whether the issue defined in the Notice of Intent to Arbitrate was subject to arbitration</u>.  "The scope of the arbitrator's authority is limited to the issue submitted to [her] by the parties." *Sunshine Mining*

*some evidence* that the discrimination issue **may** have been encompassed in the original grievance, as Article 3 was cited and the Employer did not present evidence that discrimination was not discussed during grievance meetings." *Id.* at p. 14 (emphasis added).

1   *Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1294 (9th Cir. 1987).  Once

2   the arbitrator makes a finding on the issue submitted, her authority comes to an end.  *Butterkrust*

3   *Bakeries v. Bakery, Confectionery & Tobacco Workers Int'l Union, AFL-CIO, Local No. 361*, 726

4   F.2d 698, 700 (11th Cir. 1984).  "Whether an arbitrator has exceeded these bounds is an issue for

5   judicial resolution." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators'*

6   *Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583 (5th Cir. 1980).  Here,

7   the Arbitrator decidedly exceeded the scope of her authority when she misconstrued the issue

8   presented and, in doing so, expanded her inquiry well beyond the scope of the question the Parties

9   submitted.

10      In its Notice of Intent to Arbitrate, the Union listed the "issue" as "False Information

11   Provided by IDSC."  Robertson Decl., ¶ 13, Exh. J.  The Parties then certified the following

12   question to the Arbitrator: "[w]hether the Union's notice of intent to arbitrate sets forth an issue

13   that is subject to arbitration?"  *Id.*, ¶ 14, Exh. K.  For some reason that is not apparent from the

14   Award, the Arbitrator did not consider the issue submitted in the Notice of Intent to Arbitrate.

15   Instead, the Arbitrator found that a different issue – "Did the Employer unjustly send the Grievant

16   home without pay predicated on false information provided by the IDSC?"– was arbitrable.

17   Indeed, the Arbitrator went even further to suggest that this new issue was "broad enough to

18   include alleged discrimination and other unjust reasons for the Company's placement of the

19   Grievant on Company-initiated leave without pay" despite the fact that "discrimination and other

20   unjust reasons for the Company's placement of the Grievant on Company-initiated leave without

21   pay" were *not identified* in the Notice of Intent to Arbitrate, and therefore not properly before the

22   Arbitrator at all. *Id.*, ¶ 14, Exh. K at p. 14.

23      The Arbitrator stated that "[a]t the arbitration hearing, the Union focused its arguments on

24   its claim under Section 3.09 that the Company discriminated on the basis of perceived disability

25   when it sent the Grievant home." *Id.* at 12-13.  However, the Union did not make a claim under

26   CBA section 3.09 in the grievance process, or, crucially, in its Notice of Intent to Arbitrate.[5] *See*

27
─────────────────────────
28   [5] The Opinion and Award reasoned that "[t]here is some evidence that the discrimination issue
     may have been encompassed in the original grievance, as Article 3 was cited," despite the fact

*id.* at 12 ("no contractual violations cited" in letter of intent to arbitrate); Robertson Decl. ¶ 14, Exh. K.  Moreover, nothing in the CBA suggests that a dispute regarding the veracity of information the IDSC provides would be subject to grievance or arbitration procedures under the anti-discrimination provisions.  Indeed, the IDSC administers benefits for Pacific Bell, and CBA section 5.07B *expressly excludes* from arbitration disputes relating to benefits, including Pensions, Disability, Benefits, and administration of the Plan: "nothing in this Contract shall be construed to subject the Plan or its administration to arbitration."

Instead of reading the issue submitted as defining her own authority, the Arbitrator's reasoning in the Award described her authority as virtually unbounded, unless Pacific Bell made an affirmative showing to the contrary.  *Id.* ¶ 14, Exh. K at p. 13-14 ("The Company has pointed to nothing in the collective bargaining agreement that excludes discrimination claims from arbitration … the Company has the burden to show that the issue is not procedurally arbitrable … the Employer did not present evidence that discrimination was not discussed during grievance meetings.").  This not only misidentifies the "issue" in the Intent to Arbitrate – and thus the question submitted to the Arbitrator which was limited to the issue in the Notice of Intent – but also runs contrary to both the arbitration provision in the CBA, and caselaw establishing that the issue presented defines the arbitrator's authority (not vice versa).  *See Sunshine Mining Co.*, 823 F.2d at 1294.

Because the Arbitrator did not limit herself to the "issue" listed by the Union in its own Notice of Intent to Arbitrate, the Arbitrator then mistakenly concluded that this notice "is broad enough to include alleged discrimination and other unjust reasons for the Company's placement of the Grievant on Company-initiated leave without pay" because elsewhere in the document the Union listed its "position" as "that the Company unjustly sent Mr. Mulvaney home without pay predicated on false information provided by the IDSC."  *Id.* ¶ 14, Exh. K at p. 14.  Therefore,

---

that the Opinion and Award earlier stated that "no contractual violation was cited" in the Notice of Intent to Arbitrate, and despite the fact that the grievance cited the entirety of Article 3, which is 13 pages long and covers all Company-Union relations. *Id.* ¶ 14, Exh. K at p. 14. Since Article 3 was not cited in the issue presented in accordance with CBA section 7.10D, the relevance of this comment is unclear and further suggests the Arbitrator improperly considered matters outside of the scope of the issue submitted for arbitration.

1   rather than confining herself to the question presented – i.e. whether "False Information

2   Submitted by IDSC" set out an arbitrable question – the Arbitrator issued a ruling to resolve an

3   issue that was not raised by the parties and therefore not subject to arbitration.

4        The Arbitrator's authority should have come to an end after resolving whether the issue

5   presented, "False Information Submitted by IDSC," stated an arbitrable issue. *Butterkrust*

6   *Bakeries*, 726 F.2d at 700.  Instead, the Arbitrator ignored the issue presented and instead posed a

7   new issue rooted in purported (and factually unsupported) "disability discrimination" to conclude

8   that an arbitrable question existed.  The Arbitrator clearly exceeded the scope of the issue

9   submitted to her, and therefore the Award should be vacated.

10       **B.      The Arbitrator's Award Does Not Draw Its Essence From the CBA.**

11       Because the Arbitrator misconstrued the "issue" presented, her Award automatically fails

12  to draw its essence from the CBA.  However, even if the Court were to conclude that the

13  Arbitrator properly stated the submitted "issue," the inquiry does not stop there.

14       An arbitration award should be set aside for failing to draw its essence from the contract

15  where "a court determines that the arbitrator's award ignored the plain language of the contract."

16  *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1205-

17  06 n. 6 (9th Cir. 1989).  Vacatur may also be appropriate if the arbitrator's "interpretation of any

18  of the relevant CBA provisions was not on its face a plausible interpretation of the contract."

19  *Virginia Mason Hosp. v. Washington State Nurses Ass'n*, 511 F.3d 908, 914 (9th Cir. 2007).  The

20  Arbitrator's conclusion – that the purported "disability discrimination" grounded in an IDSC

21  mistake is arbitrable – does not draw its essence from the CBA because it ignores all the

22  procedural requirements for commencing arbitrations set forth in the CBA.

23       The foundation of the Arbitrator's Award consists of a reading that subverts the CBA's

24  procedural requirements for arbitration.  CBA section 7.05E1a sets out the guidelines that assure

25  specificity in written grievances, which must "include the nature of the grievance; the date of the

26  occurrence; the contractual article/section alleged to have been violated, if applicable, or if not

27  applicable, the source of the alleged violation (e.g., MOA name or number, discipline,

28  documentation); the name of the grievant; and the remedy sought."  Section 7.10D provides

1  additional (but similar) requirements for an intent to arbitrate:

2          This notice will specify the issues involved in the grievance and
3          remedy requested .… This clarification will define the nature of the
          grievance; the date of the occurrence; the contractual article/section
4          alleged to have been violated, if applicable, or if not applicable, the
          source of the alleged violation (e.g., MOA name or number,
5          discipline, documentation); the name of the grievant; and the
          remedy sought.

6          Had Mulvaney wished to pursue a grievance regarding disability discrimination, the CBA

7  provided an avenue to do so.  Mulvaney could have submitted a written grievance pursuant to

8  section 7.05E1, identifying an alleged violation of CBA section 3.09 ("neither the Companies nor

9  the Union shall unlawfully discriminate against any employee … because the person is

10 disabled").  If Mulvaney or the Union were dissatisfied with the results of that grievance, they

11 could have submitted a Notice of Intent to Arbitrate that specified disability discrimination as an

12 issue, and section 3.09 as the source of the violation.  Mulvaney did not do any of these things.

13 In fact, disability and disability discrimination were not listed in either the grievance or the Notice

14 of Intent to Arbitrate, thus placing them outside of Arbitrator's review.  However, the Arbitrator

15 chose to ignore this failure to comply with the CBA.

16         Instead of applying the relevant sections of the CBA to determine what source, if any,

17 Mulvaney identified as the basis for the alleged violation, the Arbitrator made a broad finding that

18 implied that virtually any action by Pacific Bell would be grievable and arbitrable, in essence

19 eliminating the requirement to identify the source of the alleged violation out of the CBA

20 language.  In doing so, the Arbitrator made three determinations:

21         First, the Arbitrator relied on CBA section 7.05E1, which provides the requirements for

22 presenting *grievances* (not issues for arbitration) and found that "the source of the grievance can

23 be a Company action" and does not need to allege a violation of the CBA or its provisions to be

24 arbitrable.  Robertson Decl. ¶ 14, Exh. K at p. 12.  This reading ignores CBA section 7.10D

25 which expressly requires that the Union "define [t]he article/section alleged to have been violated

26 or the source of the alleged violation" and lists "MOA name or number, discipline,

27 documentation" as alternative sources of a violation that could be specified.

28         Second, the Arbitrator noted that the Union *did* identify three Articles of the CBA as the

basis for its grievance,[6] and stated that "the dispute as defined at this level is within the scope of section 7.05.E1a even if there are no contractual violations cited" in the Notice of Intent to Arbitrate. *Id.* But Section 7.05E1 applies to grievances, not arbitration. The Arbitrator interpreted a CBA provision that does not even apply to arbitration to find that any "Company action," including a vague reference to a failure to make an employee "whole," could be pursued through the grievance process. This finding does not draw its essence from the CBA because it is an implausible interpretation of the CBA's requirement for written grievances and does not take into account section 7.10D's requirement that the Union "specify" and "clarify" issues prior to submission for arbitration.

Third, the Arbitrator speculated that even if the Union did not cite a contractual violation (which it did not), Pacific Bell was involved in discussions of the issue during the grievance process and knew, "at a minimum," that "the grievance was alleging that false information from the IDSC led to its actions, which deprived the Grievant of compensation." Robertson Decl. ¶ 14, Exh. K at p. 12. There is no exception in the CBA to the procedural requirements for grievances and arbitration, and the Arbitrator's finding such an exception further underscores that the Award was not drawn from the CBA. To suggest that the Union can rely on some vague concept of the purported knowledge of the company to exceed or change the scope of the issues for arbitration or supply additional sources of the alleged violation is to completely disregard the CBA's language regarding problem resolution procedures. The Arbitrator expressly lacks the power to change these procedures. *See* CBA section 7.13 ("The Arbitrator has no authority to add to, subtract from, or otherwise modify the provisions of the Contract.").

The Arbitrator's Opinion and Award sidesteps the foundational problem of lack of jurisdiction by interpreting the CBA in an implausible manner that renders the CBA's procedures virtually meaningless. The Award thus fails to draw its essence from the CBA, and should be vacated.

---

[6] The CBA articles cited in the grievance cover over 25 pages of the CBA, encompassing Pacific Bell's recognition of CWA, Company-Union Relations, and all Problem Resolution Procedures. The grievance also cites "any other [article] that may apply," potentially implicating the entirety of the CBA in the grievance process.

### C.   The Arbitrator's Award Runs Counter to Public Policy.

The Arbitrator's Award should be vacated for an additional, independent reason: it runs counter to public policy.  "To vacate an arbitration award on public policy grounds, we must (1) find that 'an explicit, well defined and dominant policy' exists here and (2) that 'the policy is one that specifically militates against the relief ordered by the arbitrator.'"  *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995) (citation omitted).

The Arbitrator's Award finding that Mulvaney's submitted issue is arbitrable is contrary to public policy because the essence of the wrong identified by Mulvaney and the Union is an issue falling exclusively within the purview of workers' compensation.  The issue stated in the Notice of Intent to Arbitrate is "False Information Provided by IDSC."  The information provided by the IDSC, which the Union describes as "false," is the 2013 AME Report, to which Mulvaney, *represented by counsel*, stipulated and on the basis of which he received a monetary award in workers' compensation.  Robertson Decl. ¶ 14 Exh. K.  To correct information that Mulvaney saw as incorrect and obtain clearance to return to work, Mulvaney underwent a re-evaluation from the workers' compensation doctor who completed the 2013 AME Report, with the assistance of his workers' compensation attorney. *Id.* ¶ 14, Exh. K.  Pacific Bell then promptly returned him to work.

Mulvaney's workers' compensation award compensated him for his alleged injury, and any resulting inability to work.  The public policy for workers' compensation exclusivity is explicit, well-defined, and dominant. *See Evans v. Arizona Cardinals Football Club, LLC*, 262 F. Supp. 3d 935, 938 (N.D. Cal. 2017) ("[s]uits by employees against their immediate employers for injuries arising out of and in the course of employment are now barred by virtually all workmen's compensation statutes in this country") (internal citation and quotation marks omitted); *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 811-12 (2001) (an alleged injury "falls within the scope of the exclusive remedy provisions" of workers' compensation if it is "collateral to or derivative of" the course of employment).  The California workers' compensation statute provides exclusive remedies, with certain limited exceptions, for claims by employees

1    against their employers based on industrial injuries.  Cal. Lab. Code §§ 3600, 3601, 3602.

2           This express policy of exclusivity militates against arbitration of workers' compensation

3    issues in another forum.  Mulvaney and the Union have not alleged the type of intentional wrong

4    by Pacific Bell which would bring the dispute outside the scope of workers' compensation

5    system.  To determine whether the information the IDSC provided (the 2013 AME Report) was

6    "false" would require determination of the nature and extent of Mulvaney's industrial injury.  As

7    is apparent from the sequence of events that have already occurred, Mulvaney was able to submit

8    updated information regarding his workers' compensation injury and resulting work restrictions

9    via the 2013 AME Report doctor and his workers' compensation attorney, rather than arbitration.

10   A conclusion that the veracity of the IDSC restriction is arbitrable would logically lead to the

11   Arbitrator deciding actual issues regarding the nature and extent of Mulvaney's disability.[7]  This

12   is clearly within the exclusive purview of worker's compensation proceedings.  *Compare SunLine*

13   *Transit Agency v. Amalgamated Transit Union, Local 1277*, 189 Cal. App. 4th 292, 304-05

14   (2010) (reasoning that workers' compensation exclusivity would not apply to bar arbitration

15   because, *inter alia*, "the arbitrator was *not* required to make factual findings on the nature and

16   extent of [Employee's] disabilities or his workers' compensation remedies") (emphasis added).

17   Modification of the 2013 AME Report is a remedy available through the workers' compensation

18   system, and indeed, Mulvaney has already pursued and accomplished that remedy.

19          The information the IDSC provided was from the 2013 AME Report.  The clear policy of

20   workers' compensation exclusivity under California law militates against arbitration of whether

21   the information IDSC provided was "false."  Therefore, the Opinion and Award should be

22   vacated.

23

---

24   [7] Further reinforcing the propriety of addressing this issue in the workers' compensation context,
     Mulvaney would not have been able to collaterally attack the 2013 AME Report via a civil
25   lawsuit due to the doctrine of judicial estoppel.  Judicial estoppel prevents a party from asserting a
     position in a legal proceeding that is inconsistent with a position previously taken in the same or
26   some earlier proceeding, such as claiming that he can perform work functions which a prior
     workers' compensation settlement determined he is unable to perform.  *Jackson v. Cty. of Los*
27   *Angeles*, 60 Cal.App.4th 171, 181 (1997).  "The doctrine of judicial estoppel has had particular
     significance" in disability discrimination cases in which claimants previously recovered workers'
28   compensation benefits.  *Drain v. Betz Labs., Inc.*, 69 Cal.App.4th 950, 955 (1999).

1

**IV.    <u>CONCLUSION</u>**

2          For the foregoing reasons, Pacific Bell respectfully requests that the Court VACATE the

3    Arbitrator's Opinion and Award, issued by Arbitrator Katherine J. Thomson in Arbitrator's Case

4    No. 454-OLC/CWA Case No. 9-7-10 on September 25, 2018.

5    DATED:  January 3, 2019                         GBG LLP

6
                                                     By:_____/s/ Elizabeth A. Brown_____
7                                                              ELIZABETH A. BROWN

8                                                    Attorneys for Petitioner
                                                     PACIFIC BELL TELEPHONE COMPANY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28